IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PUBLIC IMPACT, LLC,            )
                              )
                Plaintiff,     )
                              )
        v.                     )        15-cv-464
                              )
BOSTON CONSULTING GROUP, INC., )
                              )
                Defendant.     )


**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This is a trademark infringement case brought by Plaintiff Public Impact, LLC ("Public Impact"), against Boston Consulting Group, Inc. ("BCG"). Before the court are three motions: (1) Public Impact's motion for temporary restraining order and preliminary injunction (Doc. 6); (2) Public Impact's motion to seal (Doc. 11); and (3) BCG's motion to dismiss for lack of personal jurisdiction and, alternatively, to transfer venue (Doc. 20). For the reasons set forth below, Public Impact's motion to seal and BCG's motion to dismiss for lack of personal jurisdiction will be granted; Public Impact's motion for injunctive relief will therefore be denied without prejudice as moot.

I.  **BACKGROUND**

The allegations of the complaint and supporting affidavits

show the following:[1]

Public Impact is an education policy and management consulting firm, located in Carrboro, North Carolina. (Doc. 8 ¶¶ 3, 7.) Its clients include private foundations, government agencies, nonprofits, and education policy leaders. (Id. ¶ 13.) Public Impact owns a federally registered trademark, PUBLIC IMPACT, Registration No. 2,805,013, which has been used continuously since 1996 and was registered in 2006. (Id. ¶¶ 5-8; Doc. 8-1.) In 2009, the United States Patent and Trademark Office declared the registration incontestable, pursuant to 15 U.S.C. § 1065. (Doc. 8 ¶ 10; Doc. 8-2.) Public Impact uses its trademark on its publications, websites, Facebook account, and Twitter page. (Doc. 8 ¶¶ 15-16, 26-27.)

BCG is a global management consulting firm incorporated in Massachusetts and maintains its corporate offices in Boston, Massachusetts. (Doc. 22 ¶ 3.) It is registered to do business in North Carolina and in every other State that requires such registration. (Id. ¶ 5; Doc. 1-1.) BCG has previously initiated, solicited, and engaged in education-related business within North

---

[1] The court may consider supporting affidavits when determining whether a plaintiff has made a prima facie showing of personal jurisdiction. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) ("When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction.").

Carolina. In 2010, BCG representatives attended a North Carolina State Board of Education planning session. (Doc. 31-3.) In 2012, BCG and Public Impact exchanged emails to discuss an education initiative. (Doc. 8 ¶ 32; Doc. 8-7.) In a 2010 publication, BCG listed its business accomplishments in North Carolina to include managing North Carolina's proposal for federal education funding and reorganizing North Carolina's Department of Public Instruction. (Doc. 31-4 at 7; see also Doc. 31-2; Doc. 31-5; Doc. 31-6.) BCG also lists North Carolina on its website as a state to which it has provided "recent [educational] efforts." (Doc. 10-2 at 5.) From 2007 to 2014, BCG's North Carolina revenue comprised about 0.3% of its worldwide revenue, which amounts to tens of millions of dollars. (Doc. 22 ¶ 5; Doc. 30 at 6 (citing Doc. 31-7).) There is no indication, though, as to what percentage of that revenue derived from any education-related business activity by BCG in North Carolina. Finally, BCG helps host a consulting "Case Competition" every year at Duke University. (Doc. 31-1.)

In June 2014, BCG created the "Centre for Public Impact: A BCG Foundation" ("CPI"). (Doc. 23 ¶ 3.) BCG owns the trademark, THE CENTRE FOR PUBLIC IMPACT: A BCG FOUNDATION, No. UK00003069013, in the United Kingdom, and owns several trademarks in other countries as well. (Id. ¶ 6.) BCG solely funds CPI, and CPI shares an office with BCG in London, where CPI is based. (Id. ¶ 3.) BCG publishes about CPI on its website. (See, e.g., Doc.

3

10-7 at 4-6.)

CPI's mission is to "bring[] together world leaders to learn, exchange ideas and inspire each other to strengthen the public impact of their organizations." (Doc. 10-1 at 46.) CPI describes itself as "a global forum where leaders can learn" by "[s]haring insights from around the world." (Id.) Its officers include those who specialize in education. (Id. at 17, 19-20.) CPI, however, has no employees in the United States, and it is in the process of registering as a not-for-profit organization in Switzerland. (Doc. 23 ¶¶ 3-4.) CPI has conducted four events using its mark, all of which have occurred outside the United States, namely in London, England; New Delhi, India; and Jakarta, Indonesia. (Doc. 10-1 at 32-34, 46-47.)

CPI has a website, as well as Twitter and LinkedIn accounts. (Doc. 9-4; Doc. 9-5; Doc. 23 ¶ 7.) BCG owns CPI's website. (Doc. 9-2.) CPI has published at least one education-related article on its website and also tweets about education. (Doc. 9-5; Doc. 10-1 at 15-16.) CPI's website contains informational links titled "Who We Are" and "What We Do," which describe CPI and its mission. (Doc. 10-1 at 2.) The site also links to news articles and interviews relating to CPI — none of which is alleged to connect to North Carolina. (Id. at 15-16, 22-23, 32-39, 41-45.) The website also allows visitors to "Participate" but limits visitors' participation to signing up for news about CPI. (Id. at 40.)

4

On June 9, 2015, Public Impact filed its complaint against BCG, raising various claims regarding the use of Public Impact's registered trademark and claiming essentially that BCG is using CPI, and specifically the similarly-named "Centre for Public Impact" through CPI's website, to confuse and lure customers to BCG's consulting business that competes directly with Public Impact's. (Doc. 1) Contemporaneous with its complaint, Public Impact moved for temporary and preliminary injunctive relief and to seal certain documents filed in support. (Docs. 6, 11.) On June 16, 2015, BCG moved to dismiss the complaint for lack of personal jurisdiction and, alternatively, to transfer venue to Boston. (Doc. 20) The parties filed responding briefs (Docs. 24, 28), and the court held an adversarial hearing on Public Impact's motion for a temporary restraining order on June 17, 2015. Following the hearing, the parties filed supplemental briefing on BCG's motion to dismiss for lack of personal jurisdiction and, alternatively, to transfer venue. (Docs. 30, 32.) On July 6, 2015, BCG responded to Public Impact's motion for preliminary injunction and motion to seal. (Docs. 33, 36.)

The motions are now ready for resolution.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Public Impact bears the burden of establishing personal jurisdiction by a preponderance of the evidence. See <u>Universal</u>

Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014);

Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334

F.3d 390, 396 (4th Cir. 2003); Combs v. Bakker, 886 F.2d 673, 676

(4th Cir. 1989). "When, however, as here, a district court decides

a pretrial personal jurisdiction motion without conducting an

evidentiary hearing, the plaintiff need only make a prima facie

showing of personal jurisdiction."[2]  Carefirst, 334 F.3d at 396;

see also Combs, 886 F.2d at 676.  "In deciding whether the

plaintiff has proved a prima facie case of personal jurisdiction,

the district court must draw all reasonable inferences arising

from the proof, and resolve all factual disputes, in the

plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56,

60 (4th Cir. 1993); accord Carefirst, 334 F.3d at 396.  If the

existence of jurisdiction turns on disputed factual questions, the

court may resolve the challenge on the basis of an evidentiary

hearing or, if a prima facie demonstration of personal jurisdiction

has been made, it can proceed "as if it has personal jurisdiction

over th[e] matter, although factual determinations to the contrary

may be made at trial." Pinpoint IT Servs., L.L.C. v. Atlas IT

Exp. Corp., 812 F. Supp. 2d 710, 717 (E.D. Va. 2011) (citing 2

James Wm. Moore et al., Moore's Federal Practice ¶ 12.31 (3d ed.

---

[2] By the time of the June 17, 2015 hearing on Public Impact's motion for temporary restraining order, the parties lacked the opportunity to have fully briefed the issue of personal jurisdiction or gather evidence.

2011)); see also Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp., 737 F. Supp. 925, 926 (W.D. Va. 1990) ("When conflicting facts are contained in the affidavits, they are to be resolved in the plaintiff's favor."). Nevertheless, either at trial or at a pretrial evidentiary hearing, the plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n.5 (4th Cir. 2005).

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002); see also Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). To determine whether personal jurisdiction is proper, the court engages in a two-part inquiry: first, North Carolina's long-arm statute must provide a statutory basis for the assertion of personal jurisdiction, and, second, the exercise of personal jurisdiction must comply with due process. See Carefirst, 334 F.3d at 396; Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011).

In Christian Science Board of Directors of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209 (4th Cir. 2001), the Fourth Circuit held that N.C. Gen. Stat. § 1-75.4(1)(d) runs

coextensively with the Due Process Clause, thereby collapsing the two-step process "into a single inquiry" as to whether the non-resident defendant has such "minimal contacts" with North Carolina that exercising jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."[3] 259 F.3d at 215 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); see also Cambridge Homes of N.C., LP v. Hyundai Const., Inc., 670 S.E.2d 290, 295 (N.C. Ct. App. 2008) ("When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry — whether defendant has the minimum contacts necessary to meet the requirements of due process." (quoting Filmar Racing, Inc. v. Stewart, 541 S.E.2d 733, 736 (N.C. Ct. App. 2001))). The Fourth Circuit recently confirmed its interpretation of North Carolina's long-arm statute, holding that the issue of specific jurisdiction under N.C. Gen. Stat. § 1-75.4(1)(d) "merges" the two-prong test "into the single question" of whether a defendant has "sufficient contacts with North Carolina to satisfy constitutional due process." Universal Leather, 773 F.3d at 558-59. Thus, the single inquiry here is whether the exercise of personal jurisdiction over BCG "is consonant with the strictures

---

[3] BCG makes no argument that Public Impact fails to cite a statutory provision supporting personal jurisdiction. See Danner v. Int'l Freight Sys. of WA, L.L.C., No. CIVA RDB-09-3139, 2010 WL 2483474, at *3 (D. Md. June 15, 2010) (analyzing personal jurisdiction despite plaintiffs' failure to cite a long-arm statutory provision).

of due process." <u>Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.</u>, 682 F.3d 292, 301 (4th Cir. 2012) (per curiam).

Under the Due Process Clause, personal jurisdiction over a defendant may be either general or specific. <u>See Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct. 2846, 2851 (2011); <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 nn.8–9 (1984); <u>Tire Eng'g & Distribution</u>, 682 F.3d at 301. Public Impact argues that this court may exercise both over BCG.

### 1. General Jurisdiction

The Supreme Court has recently held that, aside from the "exceptional case," general personal jurisdiction over a corporation is usually only appropriate in the corporation's state of incorporation or principal place of business. <u>See Daimler</u>, 134 S. Ct. at 761 n.19. There is no allegation that North Carolina is BCG's state of incorporation or its principal place of business.[4] Instead, Public Impact argues that general jurisdiction exists because BCG is registered to do business in North Carolina. (Doc. 28 at 3–11; Doc. 30 at 1–2.)

Public Impact's argument is foreclosed by binding Fourth Circuit precedent. In <u>Ratliff v. Cooper Labs., Inc.</u>, 444 F.2d 745

---

[4] Nor does Public Impact argue that BCG's contacts with North Carolina — outside of BCG's registration — are "so substantial and of such a nature as to render the corporation at home in [North Carolina]." <u>Daimler</u>, 134 S. Ct. at 761 n.19.

(4th Cir. 1971), the Fourth Circuit held that registration to do business in a forum does not confer personal jurisdiction over an out-of-state corporation. Id. at 748. It reasoned, "The principles of due process require a firmer foundation than mere compliance with state domestication statutes." Id. The Fourth Circuit recently reaffirmed Ratliff's holding in Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd., 511 F.3d 437 (4th Cir. 2007), citing Ratliff for the proposition that "the designation of a statutory agent for service [is] insufficient to confer general jurisdiction over an out-of-state corporation." Rosenruist-Gestao, 511 F.3d at 446 (citing Ratliff, 444 F.2d at 748).

After Ratliff, lower courts in this circuit have routinely applied its holding. For example, in Kuennen v. Stryker Corp., No. 1:13CV00039, 2013 WL 5873277 (W.D. Va. Oct. 30, 2013), the court held that a defendant's "business certificate and appointed agent . . . are not independent support for general jurisdiction — 'the principles of due process require a firmer foundation than mere compliance with state domestication statutes.'" Id. at *4 (quoting Ratliff, 444 F.2d at 748); see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F. Supp. 2d 545, 551 (E.D. Va. 2004) (citing and relying on Ratliff for the proposition that "complying with registration statutes and appointing an agent for service of process do not amount to consent to general personal jurisdiction"). Similarly, another decision from this district

10

concluded, citing Ratliff, "A corporation's registration to do business in the state alone is not the deciding factor on which jurisdiction should be determined." Estate of Thompson ex rel. Thompson v. Mission Essential Pers., LLC, No. 1:11CV547, 2013 WL 6058308, at *2 n.1 (M.D.N.C. Nov. 14, 2013), report and recommendation adopted sub nom. Estate of Thompson v. Mission Essential Pers., LLC, No. 1:11CV547, 2014 WL 4745947 (M.D.N.C. Sept. 23, 2014). In sum, Fourth Circuit law forecloses Public Impact's argument that this court has general jurisdiction over BCG because it is registered to do business in this State.[5]

Public Impact's arguments to the contrary are unpersuasive. First, Public Impact argues that the Supreme Court's decision in Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982), abrogated the Fourth Circuit's decision in Ratliff. (Doc. 28 at 9–11.) The Fourth Circuit has recognized no such abrogation and, as noted, continues to rely on Ratliff, after Insurance Corp. of Ireland, for the proposition that "the designation of a statutory agent for service [is] insufficient to confer general jurisdiction over an out-of-state corporation." Rosenruist-Gestao, 511 F.3d at 446 (citing Ratliff, 444 F.2d at

---

[5] Outside of this circuit, courts are split on this issue. Compare Senju Pharm. Co. v. Metrics, Inc., No. CIV.A. 14-3962, 2015 WL 1472123, at *5–8 & n.7 (D.N.J. Mar. 31, 2015), with AstraZeneca AB v. Mylan Pharm., Inc., 2014 WL 5778016, at *4–5 (D. Del. 2014), motion to certify appeal granted sub nom. Astrazeneca AB v. Aurobindo Pharma Ltd., No. CV 14-664, 2014 WL 7533913 (D. Del. Dec. 17, 2014).

748).  Public Impact argues that <u>Insurance Corp. of Ireland</u> "endorsed jurisdiction by consent" (Doc. 28 at 10) but fails to explain how that endorsement — in a decision upholding the imposition of sanctions under Rule 37 of the Federal Rules of Civil Procedure — abrogated <u>Ratliff</u>.  <u>See</u> <u>Ins. Corp. of Ireland</u>, 456 U.S. at 702–09 (upholding district court's Rule 37 sanctions, which had the effect of assuming personal jurisdiction over certain defendants).

Second, Public Impact argues that the Supreme Court's century-old decision in <u>Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.</u>, 243 U.S. 93 (1917), allows for general jurisdiction over a defendant who follows a state's registration statute.  This argument is unconvincing.  Most importantly, the Fourth Circuit's decision in <u>Ratliff</u> is binding on this court.  Moreover, courts have recognized that Supreme Court decisions since <u>Pennsylvania Fire</u> "cast doubt on the continued viability" of that decision.  <u>Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.</u>, 83 F. Supp. 2d 689, 692 (E.D. Va. 2000).  Most significant is the Supreme Court's landmark decision in <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310 (1945), where the Court held that to extend personal jurisdiction over a defendant, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>Id.</u> at

12

316 (internal quotation marks and citations omitted). As courts elsewhere have observed, "After International Shoe, the focus [of the personal jurisdiction inquiry] shifted from whether the defendant had been served within the state to whether the defendant's contacts with the state justified the state's assertion of jurisdiction." Cognitronics Imaging Sys., 83 F. Supp. 2d at 692; see also Shaffer v. Heitner, 433 U.S. 186, 212 (1977) ("[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny."). More recently, in Daimler, the Supreme Court held that "continuous and systematic" business contacts with a State were insufficient for extending general jurisdiction unless those contacts were "so substantial and of such a nature as to render the corporation at home in [the forum] State." 134 S. Ct. at 761– 62 & n.19. At least some courts have interpreted Daimler to mean that a defendant's mere conformance with a State's business registration statute "cannot constitute consent to jurisdiction" and therefore is not sufficient for general jurisdiction. AstraZeneca AB v. Mylan Pharm., Inc., 2014 WL 5778016, at *5 (D. Del. 2014), motion to certify appeal granted sub nom. Astrazeneca AB v. Aurobindo Pharma Ltd., No. CV 14-664-GMS, 2014 WL 7533913 (D. Del. Dec. 17, 2014); see also Cognitronics Imaging Sys., 83 F. Supp. 2d at 692 (observing, before Daimler, that "[t]he Supreme Court has not yet addressed whether registration alone would be

13

sufficient to confer general personal jurisdiction in light of its holding in _International Shoe_").

   Lastly, even taking Public Impact's argument at face value, it is unclear whether _Pennsylvania Fire_ would apply in this case. In _Pennsylvania Fire_, the Supreme Court extended personal jurisdiction over an insurance company that was registered to do business in Missouri and, in further compliance with the law, had executed a power of attorney making service on an in-state representative "the equivalent of personal service." 243 U.S. at 94-95. The Court observed, "[W]hen a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts." _Id._ at 96. Following _Pennsylvania Fire_, the Court limited that decision's reach, noting strong "reasons for a limited interpretation of . . . compulsory assent" by way of a State statute. _Robert Mitchell Furniture Co. v. Selden Breck Const. Co._, 257 U.S. 213, 215-16 (1921) ("[W]hen a foreign corporation appoints one as required by statute it takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court."). In _Robert Mitchell Furniture_, the Court held that only when a "state law either expressly [extends] or by local construction" is interpreted to extend jurisdiction over an out-of-State defendant regarding out-of-State business should a federal court construe the State statute as such. _Id._

14

Here, Public Impact fails to demonstrate how North Carolina's registration statute "expressly" extends personal jurisdiction over registering businesses like BCG.  Public Impact's suggested interpretation of North Carolina's registration statute is not immediately obvious from the face of the statute.  <u>See</u> N.C. Gen. Stat. § 55-15-05(b) ("[A] foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.").  It also cites no decision — State or federal — construing North Carolina's registration statute to extend personal jurisdiction over registered businesses.

For all these reasons, Public Impact has not demonstrated that the court has general jurisdiction over BCG.

## 2.  Specific Jurisdiction

Specific jurisdiction requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." <u>CFA Inst. v. Inst. of Chartered Fin. Analysts of India</u>, 551 F.3d 285, 292 n.15 (4th Cir. 2009).  A court may exercise specific jurisdiction when the cause of action "arises out of the defendant's contacts with the forum." <u>Saudi v. Northrop Grumman Corp.</u>, 427 F.3d 271, 276 (4th Cir. 2005).  The determination of whether jurisdiction is

15

appropriate depends on the facts and circumstances of each case. See Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (holding that the specific jurisdiction inquiry necessitates a study of the interconnection between the defendant, the forum, and the litigation); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86 (1985). Extension of specific jurisdiction requires consideration of three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Tire Eng'g & Distribution, 682 F.3d at 301-02; see also Universal Leather, 773 F.3d at 559. Each prong must be satisfied. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278-79 (4th Cir. 2009).

The "purposeful availment" requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 475 (internal quotation marks omitted). Rather, a defendant's conduct and connection to the forum must be "such that [it] should reasonably anticipate being haled into court there." Universal Leather, 773 F.3d at 559 (quoting Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989)). If a defendant has created a "substantial connection" to the forum, then it has

16

purposefully availed itself of the privilege of conducting business there. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000); ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (holding that "contacts related to the cause of action must create a 'substantial connection' with the forum state, although this connection need not be as extensive as is necessary for general jurisdiction" (citation omitted)). The connection to the forum "must arise out of contacts that the defendant *himself* creates with the forum State." Walden, 134 S. Ct. at 1122 (quoting Burger King, 471 U.S. at 475) (internal quotation marks omitted).

This purposeful availment inquiry is flexible and includes an evaluation of (1) "whether the defendant maintains offices or agents in the forum state"; (2) "whether the defendant owns property in the forum state"; (3) "whether the defendant reached into the forum state to solicit or initiate business"; (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (5) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship"; (7) "the nature, quality and extent of the parties' communications about the business being transacted"; and (8) "whether the performance of contractual duties was to occur within

17

the forum." Consulting Eng'rs, 561 F.3d at 278 (citations omitted).

To demonstrate purposeful availment, Public Impact cites the following facts as favoring the exercise of personal jurisdiction over BCG. As to the first factor, BCG has maintained a registered agent in North Carolina since 2007 because it holds a certificate of authority to transact business in North Carolina requiring it to do so. (Doc. 1-1.) Regarding the third and fourth factors, BCG has previously initiated, solicited, and engaged in education-related business within North Carolina. In a 2010 publication, BCG listed its business accomplishments in North Carolina to include managing North Carolina's proposal for federal education funding and reorganizing North Carolina's Department of Public Instruction. (Doc. 31-4 at 7; Doc. 31-2; Doc. 31-5; Doc. 31-6.) BCG also lists North Carolina as a State to which it has provided "recent [educational] efforts." (Doc. 10-2 at 5.) From 2007 to 2014, BCG's North Carolina revenue comprised about 0.3% of its worldwide revenue, which amounts to tens of millions of dollars. (Doc. 22 ¶ 5; Doc. 30 at 7 (citing Doc. 31-7).) There is again no allegation, though, as to what percentage of that revenue, if any, came from education-related business activity by BCG in North Carolina. As to the sixth and seventh factors, there is no allegation that BCG has made in-person contact with Public Impact in the forum State regarding any business relationship. BCG and

18

Public Impact did exchange emails in 2012 to discuss an education initiative. (Doc. 8 ¶ 32; Doc. 8-7.) And, in 2010, BCG representatives attended a North Carolina State Board of Education planning session, but there is no allegation that Public Impact representatives were in attendance or any business relationship between them resulted from BCG's presence. (Doc. 31-3.) Finally, BCG helps host a consulting "Case Competition" every year at Duke University. (Doc. 31-1.)

Public Impact, however, fails to demonstrate how those contacts with North Carolina give rise to the claims in this case. See Tire Eng'g & Distribution, 682 F.3d at 301–03 (holding that a plaintiff's claims must "arise out of" a defendant's contacts with the forum state); Saudi, 427 F.3d at 276 (same). "Specific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state." Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 801 (7th Cir. 2014), as corrected (May 12, 2014). Here, the complaint raises claims concerning BCG's alleged use of Public Impact's trademark. (Doc. 1 ¶¶ 49–82.) None of those activities cited above by Public Impact, however, gives rise to its claims of trademark infringement. See Walden, 134 S. Ct. at 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." (emphasis added)); Goodyear

19

<u>Dunlop Tires Operations</u>, 131 S. Ct. at 2851 (referring to specific jurisdiction as "case-linked" jurisdiction); <u>Advanced Tactical</u>, 751 F.3d at 801 (holding, in a trademark action, that "[t]he only sales" in a forum by a defendant "that [are] relevant are those that were related to [a defendant's] allegedly unlawful activity"). None of BCG's past activity in North Carolina relates to its alleged trademark infringement. In fact, all of BCG's education-related business in North Carolina cited by Public Impact occurred well before Public Impact claims the trademark infringement began and CPI was created.

Public Impact attempts to tie BCG and the alleged trademark infringement to North Carolina through BCG's Internet activity. Notably, Public Impact does not allege that BCG has infringed its trademark in North Carolina other than through the Internet, namely through BCG's and CPI's websites, Twitter, and LinkedIn. (Doc. 1 ¶¶ 41-46.) Public Impact's allegations of trademark infringement, however, fail to sufficiently connect BCG to this State.

In <u>ALS Scan, Inc. v. Digital Service Consultants, Inc.</u>, 293 F.3d 707 (4th Cir. 2002), the Fourth Circuit addressed "when electronic contacts with a State are sufficient" to exercise personal jurisdiction over a defendant. <u>Id.</u> at 713. The <u>ALS Scan</u> decision expressly "adopt[ed] and adapt[ed]" the model established in <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997). The <u>Zippo</u> model created a "sliding scale"

20

for examining personal jurisdiction in the context of electronic contacts with a forum state. <u>ALS Scan</u>, 293 F.3d at 713. Outlining this "sliding scale," the <u>Zippo</u> Court explained:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

<u>Id.</u> at 713-14 (quoting <u>Zippo</u>, 952 F. Supp. at 1124). Applying <u>Zippo</u>, the Fourth Circuit held,

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

<u>Id.</u> at 714. Elucidating this three-prong test, the Fourth Circuit further instructed, "Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received." <u>Id.</u>

21

Applying that test to a case involving claims of trademark infringement, the Fourth Circuit in ALS Scan found that the alleged Internet activity "was, at most, passive" and no personal jurisdiction existed because the defendant "did not select or knowingly transmit" the infringing material "specifically to" the forum State "with the intent of engaging in business or any other transaction" in the forum State. Id. at 714-15.

Two Fourth Circuit decisions have since applied ALS Scan's three-prong test. In Young v. New Haven Advocate, 315 F.3d 256 (4th Cir. 2002), the Fourth Circuit found that a district court lacked specific jurisdiction over a Virginia libel suit against two Connecticut newspapers. Id. at 261-64. The newspapers in question had posted an article about a Virginia prison on their websites. Id. at 259. Examining the website in question, the Fourth Circuit concluded that "neither newspaper's website contain[ed] advertisements aimed at a Virginia audience" and that the newspapers posted their articles with an intent to target a Connecticut — not Virginia — audience. Id. at 263-64. As a result, the Fourth Circuit held, "[T]he newspapers do not have sufficient Internet contacts with Virginia to permit the district court to exercise specific jurisdiction over them." Id. at 264.

The second case — Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390 (4th Cir. 2003) — was a trademark infringement case. There, a Maryland corporation had

22

sued an Illinois corporation in Maryland because of alleged trademark infringement on the Illinois corporation's website. Id. at 393-95. The Fourth Circuit examined whether the Illinois corporation, through its website, "expressly aimed its trademark-infringing conduct at the forum state" and determined that the corporation had not done so. Id. at 398, 401. In reaching its conclusion, the Fourth Circuit found persuasive that (1) the website was "semi-interactive," containing "features that make it possible for a user to exchange information with the host computer," with little "concrete evidence" of exchanges between Maryland residents and the Illinois corporation; and (2) the content on the website had "a strongly local character." Id. at 400-01.

"These cases demonstrate that the Fourth Circuit has been notably reluctant to extend personal jurisdiction to out-of-state defendants based on little more than their presence on the Internet." Rao v. Era Alaska Airlines, 22 F. Supp. 3d 529, 539 (D. Md. 2014). Applying the reasoning of ALS Scan and its progeny to the facts in this case, the court finds that BCG's use of its and CPI's website, as well as Twitter and LinkedIn, fails to support the extension of specific jurisdiction over BCG.

First, CPI's website is, at best, "semi-interactive" and could more appropriately be described as "minimally interactive." Christian Sci., 259 F.3d at 218 n.11 (applying this description to

23

a website that "invited visitors . . . to e-mail questions and information requests" to the out-of-state defendant). Most of CPI's website does "little more than make information available to those who are interested in it." ALS Scan, 293 F.3d at 714 (quoting Zippo, 952 F. Supp. at 1124). For example, CPI's website contains informational links titled "Who We Are" and "What We Do," which describe CPI and its mission. (Doc. 10-1.) The site also links to news articles and interviews relating to CPI — none of which is alleged to connect to North Carolina. (Id.) The website also allows visitors to "Participate," but presently limits visitors' participation to signing up for news about CPI. (Id.) Moreover, similar to the facts in Carefirst, there is no evidence of exchanges, of any nature, between North Carolina residents and BCG or CPI through the site. 334 F.3d at 400-01. CPI's remaining Internet presence is largely "passive," consisting of occasional informational articles posted to BCG's webpage, a Twitter page, and a LinkedIn account.[6] (Id.; Doc. 10-7.)

Second, nothing about CPI's website suggests that it is specifically directed at North Carolina. See ALS Scan, 293 F.3d at 714-15. Although not "decidedly local" as in Young, 315 F.3d at 263, BCG's CPI website is broadly directed toward a "global"

---

[6] Public Impact makes no allegation that BCG, through CPI, has had any interaction with North Carolina residents through Twitter or LinkedIn.

audience. According to the website, CPI "is a global forum where leaders can learn" by "[s]haring insights from around the world." (Doc. 10-1 at 46.) The website further describes CPI as "bring[ing] together world leaders" through "global forums." (Id.) As Public Impact admits, BCG's only alleged trademark infringement beyond its electronic presence has occurred outside the United States, namely in London, England; New Delhi, India; and Jakarta, Indonesia. (Id.) This content and BCG's conduct abroad provide nothing to suggest the BCG is using CPI's website to specifically target North Carolina.[7]

Third, BCG's online use of CPI manifests no intent to target North Carolina. In its brief, Public Impact argues that BCG launched CPI as "a marketing tool for BCG's education-related consulting work in North Carolina." (Doc. 30 at 7.) In support of its assertion, Public Impact notes that BCG's "thought leadership" marketing strategy involves "distributing its ideas freely" and cites BCG's past education-related activity in North Carolina. (Id. at 4-7; Doc. 31-8.) Even inferring that BCG uses

---

[7] Citing Cable News Network L.P., L.L.L.P. v. CNNews.com, 177 F. Supp. 2d 506 (E.D. Va. 2001), aff'd in part, vacated in part sub nom. Cable News Network, LP, LLLP v. CNNews.com, 56 F. App'x 599 (4th Cir. 2003), Public Impact argues, "American courts routinely adjudicate Lanham Act cases involving extraterritorial uses of federally registered trademarks that cause a likelihood of confusion in the United States." (Doc. 30 at 12.) In that case, however, the district court exercised in rem jurisdiction over the allegedly infringing domain name because a Virginia corporation served as the domain name's registrar and registry. Id. at 512-14. The court did not find that it had personal jurisdiction over the domain name's owner.

CPI as part of its marketing strategy despite CPI's status as a soon-to-be non-profit organization, Public Impact fails to show that BCG manifested an intent to use CPI via the Internet to engage in business or other interactions within North Carolina. Also, while it may perhaps be reasonable to infer that BCG intends to continue education-related business in North Carolina (despite little evidence of education-related work within the State in several years), the presented evidence permits no reasonable inference that BCG intends to somehow use CPI to specifically target North Carolina. There is no allegation that BCG has used Public Impact's trademark in North Carolina (other than via the Internet), nor does it appear that BCG has specifically used the trademark to establish any contact with a North Carolina resident or the State of North Carolina itself. See ALS Scan, 293 F.3d at 714–15 (finding no personal jurisdiction where plaintiff failed to show defendant's knowing transmission of infringing material specifically to the forum State "with the intent of engaging in business or any other transaction in" the forum State); 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:38.40 (4th ed. 2004) ("A claim of trademark infringement takes place where the allegedly infringing sales occur.").

Under Public Impact's theory, specific jurisdiction would exist in any forum with Internet access in which BCG previously conducted education-related business because that past activity

26

has the potential to give rise to speculative, future infringing use of its trademark within that forum. However, "[a] plaintiff cannot establish personal jurisdiction by relying solely on the basis of [its] own conclusory, speculative assertions." Luellen v. Gulick, No. 1:10CV203, 2012 WL 1029577, at *5 (N.D.W. Va. Mar. 26, 2012); see also Carefirst, 334 F.3d at 402 ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."). Public Impact's speculative assertion here is unpersuasive.

In conclusion, the court finds that it lacks specific, as well as general, jurisdiction over BCG and will grant BCG's motion to dismiss on that basis.

**B. Motion to Seal**

Public Impact has also moved to seal both its unredacted brief (Doc. 14) filed in support of its underlying motion for preliminary injunction and temporary restraining order (Doc. 6) and the unredacted declaration of Bryan Hassel (Doc. 15). (Doc. 11.) BCG does not oppose the motion. (Doc. 36.)

The public enjoys a right to access documents filed in connection with a dispositive motion in a civil case. ATI Indus. Automation, Inc. v. Applied Robotics, Inc., 801 F. Supp. 2d 419, 427 (M.D.N.C. 2011) (citing Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252–53 (4th Cir. 1988)). However, a district court

27

has discretion to seal documents when the "public's right of access is outweighed by competing interests." _In re Knight Publ'g Co._, 743 F.2d 231, 235 (4th Cir. 1984). Before sealing documents, a district court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." _Ashcraft v. Conoco, Inc._, 218 F.3d 288, 302 (4th Cir. 2000) (citations omitted). The burden falls on the party seeking to keep the information sealed. _Va. Dep't of State Police v. Wash. Post_, 386 F.3d 567, 575 (4th Cir. 2004).

Public Impact has met its burden here by redacting only a small portion of material concerning two proprietary financial figures. Public notice of Public Impact's request to seal was provided on June 09, 2015, when Public Impact filed its "First MOTION to Seal," seeking to file its unredacted brief and declaration under seal. (Doc. 11.) The motion has now been pending for over a month without any objection having been raised. The court has also considered less drastic alternatives to sealing the unredacted brief and declaration. Public Impact has also filed redacted versions of both documents. (Docs. 7-8.) After a careful comparison of the redacted and unredacted documents, the court sees no less drastic alternative to the redaction of the two

28

financial figures. (Docs. 7-8, 14-15.) Finally, the limited financial information redacted in Public Impact's brief and declaration is proprietary and its public release would negatively affect Public Impact's business. See Bayer Cropscience Inc. v. Syngenta Crop Prot., LLC, 979 F. Supp. 2d 653, 656-57 (M.D.N.C. 2013) (holding that "certain marketing [and] sales" information should be sealed as it was "not ordinarily public" and would cause "harm[] by public disclosure"); Harrell v. Duke Univ. Health Sys., Inc., No. CIV.A. 7:07-813, 2007 WL 4460429, at *1 (D.S.C. Dec. 18, 2007) (approving the sealing of an entire exhibit because of the potential disclosure of proprietary information). The court, therefore, will grant Public Impact's motion to seal its unredacted brief and declaration (Docs. 14-15).

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Public Impact's motion to seal (Doc. 11) is GRANTED.

IT IS FURTHER ORDERED that BCG's motion to dismiss for lack of personal jurisdiction (Doc. 20) is GRANTED. As a result, Public Impact's motion for temporary restraining order and preliminary injunction (Doc. 6) is DENIED WITHOUT PREJUDICE AS MOOT, and this action is DISMISSED WITHOUT PREJUDICE.

                                   /s/   Thomas D. Schroeder
                              United States District Judge
August 3, 2015